# JOHN WILSON

*v.*

# THE ROCKFORD, ROCK ISLAND & ST. LOUIS R. R. CO.

1. CONDEMNING RIGHT OF WAY *for a railroad—under act of* 1852—*of the question of compensation and benefits.* Where individual property is condemned for the use of a railroad, under the act of 1852, the land taken must be paid for, under all circumstances, without regard to the benefits accruing to the owner by reason of the construction and operation of the road.

2. The measure of compensation in such case, and as guaranteed by that clause of the constitution of the State, which declares that "no man's property shall be taken or applied to public use without just compensation being made to him," is the market value of the land taken.

3. But, as against the damages to portions of such owner's property not taken, resulting from the construction and operation of the road, may be set off the benefits accruing to him thereby.

4. Where the right of way run through a man's farm so as to sever a strip of about two acres from the body of the farm, thus rendering it useless to him for farming purposes, it was *held,* that while compensation could not be demanded for such strip, it not being taken by the road, yet it would form an element in estimating the damages the owner would sustain, if any, by the construction and operation of the road—such strip or its value, the great inconvenience to which the owner is put, and the danger to which he, his family and stock are exposed, in passing from one part of the farm to the other, being regarded as proper elements to be considered by the jury in assessing the damages, against which should be set off the facilities afforded by the road, and a convenient depot for getting the products of the farm to market, as also the actual increase in the market value of the farm, occasioned by the road.

5. JUDGMENT *against railroad under act of* 1852—*for damages accruing to the owner of lands by the construction of the road—of the form thereof.* The form of the judgment, where a recovery is had under the act of 1852, should conform to that prescribed by section 15 of the act.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. HARVEY E. SHIELDS, and Mr. JOHN J. GLENN, for the appellant.

Messrs. STEWART & PHELPS, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The appellant was the owner of a tract of land in Warren county, a portion of which was wanted by appellee for its road way. Commissioners were appointed, who assessed the damages of appellant at $350, and filed their report in the office of the clerk of the circuit court of that county, in pursuance of the statute. Both parties appealed to the circuit court, when a change of venue was had to the county of Knox. There the cause was tried by a jury, they finding the same amount as the commissioners had allowed.

The verdict of the jury is as follows : "We find for plaintiff the amount of $350 for right of way, and nothing for other damages."

On this verdict the court rendered a judgment in form, as in an ordinary action of debt or assumpsit.

To reverse this judgment Wilson appeals.

Appellant makes the points, first: that the verdict of the jury is manifestly against the weight of evidence ; second, that the court allowed improper evidence to go to the jury ; third, that appellee's fourth, fifth, sixth and seventh instructions, were erroneous ; fourth, the court erred in modifying appellant's fifth and sixth instructions ; and fifth, that the judgment is not entered in conformity to the statute.

This railroad company was incorporated by an act of February 16, 1865, and by subsequent acts, passed in 1869, its charter was amended in several particulars. The petition for the right of way, in this case, was presented at the September term, 1870, of the Warren circuit court, and the mode of proceeding is in pursuance of the act of 1852. We shall, therefore, consider the case in the light of that act, and in doing so, will virtually dispose of all the points made by appellant.

It is the leading, central idea of that act, that in all cases of condemnation of individual property for the use of a railroad,

the land taken must be paid for under all circumstances, without regard to benefits accruing to the owner by reason of the construction of the road.    This fully appears from the first, fifth, sixth and eighth sections; and, indeed, from the whole tenor of that act.    Two questions are presented by the act, to the commissioners : first, the value of the land to be taken as the roadway ; second, damages resulting to the owner of the land from the construction of the road through it.    The first is to be made absolutely, in compliance with that clause of the constitution which declares that "no man's property shall be taken or applied to public use, without just compensation being made to him."—Art. 13, sec. 11.    The second may be set off against the benefits likely to result to the owner by its construction.

The commissioners, in fixing compensation for the land actually taken, will take into their consideration the market value of the land, which can always be approximated.    This value would be the measure of the compensation guaranteed by the constitution.

Did the commissioners, or the jury, give the value of the land taken for the roadway ?    A glance at the evidence shows they did not, for, as we understand the testimony, the land was worth $50 or $60 per acre without the road.    Twelve acres were taken, worth at least $600 ; this should have been allowed appellant absolutely.    This was the compensation to which he was entitled under the law, and it was guaranteed to him by the very terms of the constitution of the State.    There was also a strip of about two acres in addition, severed from the quarter section to which it belonged, rendered useless to appellant for farming purposes by the course of the road.    The adjoining proprietor may be willing, or he may not be, to purchase this strip and give for it its value.

That strip has not been taken by the railroad, and compensation for it can not be demanded.    It would form an element in estimating the damages appellant has sustained, if any, in cutting his land so as to render a portion of it useless to him.

In estimating the damages, this strip, or its value, the great inconvenience to which the owner is put, and the danger to which he, his family, and stock are exposed, in passing from one part of the farm to the other, would compose the elements for assessing the damages. Against these, should be set off the facilities afforded by the road, and a convenient depot, for getting the products of the farm to market, and if that be grain or pork, they would be considerable, and can be approximated by witnesses. The actual increase in the market value of the land, if caused by the railroad, should also be estimated and set off against the damages. *T. & P. R. R. Co.* v. *Unsicker,* 22 Ill. 221.

We forbear the expression of any opinion on the evidence, as to these points, as the case will have to go to another jury.

As to the instructions complained of, the sixth and seventh, given for appellee, should not have been given, as there is no evidence on which to base them.

The verdict is so clearly against the evidence in the cause, tested by the act of 1852, under which the proceedings were had, that the judgment must be reversed, and the cause remanded for a new trial in conformity with this opinion.

The form of the judgment will be, if a recovery is had upon another trial, according to section 15, of the act of 1852.

*Judgment reversed.*