Syllabus.

## SANITARY DISTRICT OF CHICAGO

*v.*

EDWARD F. CULLERTON *et al.*

*Filed at Ottawa October 26, 1893.*

1. EMINENT DOMAIN—*personal view as evidence on question of compensation.* In fixing the compensation for private property for public use, it is competent, under our statute, for the jury to consider what may be presented to their minds by and through their personal view and inspection of the premises, as the facts and circumstances brought to their knowledge through the medium of witnesses who testify in the case.

2. SAME—*new trial on ground of excessive damages.* On a proceeding to condemn land, if the verdict is so palpably against the weight of evidence that it can be said there is no evidence in the record on which the jury may fairly predicate the same, the trial court should not hesitate to set it aside. But in the absence of anything showing that the verdict is the result of passion, prejudice or undue influence, the court will not be justified in disturbing it.

3. NEW TRIAL—*affidavits of jurors to impeach their verdict.* Affidavits of jurors can not be received for the purpose of showing cause for setting aside their verdict. They are not admissible to show the conduct of others than the jurors, or improper conduct in arriving at a verdict by the jurors themselves, such as that it was obtained by average or by lot, or in any other improper manner.

4. SAME—*improper conduct of jurors.* The courts are clothed with ample power to punish the misconduct of jurors, and of others in their presence, and no court ought to hesitate to impose adequate penalties and set aside verdicts where there has been conduct by which the jury may have been improperly influenced, or the verdict is the result of improper conduct on the part of jurors.

5. SAME—*jurors drinking intoxicating liquors.* In a proceeding to condemn land, some of the jurors, after they had finished viewing the premises, drank intoxicating liquor, but it did not appear that any of them became intoxicated, or that the persons furnishing the liquor were in anywise interested in the case, nor was it shown that the jury were thereby influenced to the prejudice of the petitioner: *Held,* that while the jurors and the officer in charge should have been punished for the impropriety, it was not sufficient to warrant the setting aside of the verdict.

6. SAME—*suffering juror to talk with his wife.* The officer in charge of a jury should not suffer or permit any person to hold any communication with them while in his charge. But where it appeared that a juror, out of the presence of the other jurors, was allowed to. see his wife in the presence of the bailiff, and it was shown that whatever conversation she had with him was upon subjects wholly disconnected with the case, it was *held,* that such impropriety was not a sufficient ground to call for a new trial.

7. SAME—*separation of jury—time to object.* A jury, after having retired to consider of their verdict early in the afternoon, remained together until about eleven o'clock at night, and were then, under the direction of the court, permitted to separate, and to meet the court at nine o'clock the next morning. On re-assembling, the court stated to the attorneys that if they had any objection to its action, to make the same known before the verdict was received. The attorney of the appellant declined to consent or to object: *Held,* that by failing to object at the time, his right to do so afterward was waived.

8. SAME—*separation of jury—where no injury is shown.* In civil cases the court will always inquire whether injury has ensued from the separation of the jury by leave of court, and where no abuse is shown or suggested, the separation will not be sufficient to avoid the verdict.

APPEAL from the Circuit Court of Cook county; the Hon. S. P. McCONNELL, Judge, presiding.

Mr. ORRIN N. CARTER, and Mr. GEORGE E. DAWSON, for the appellant:

The jury are required to truly ascertain and report just compensation to the owner of the property, and to each person therein interested, according to the facts in the case, as the same may be made to appear by the evidence. Starr & Curtis' Stat. chap. 47, sec. 8.

The object of a view by the jury is to acquaint them with the physical condition and surroundings of the thing viewed, to enable them the better to understand and apply the evidence, and so more intelligently and fairly to perform their duties. Lewis on Eminent Domain, sec. 425; *Washburn* v. *Railroad Co.* 59 Wis. 364; *Close* v. *Samm,* 27 Iowa, 503.

The affidavits of jurors stating facts which do not essentially inhere in the verdict itself, may be received to overthrow or

set aside the verdict. *Wright* v. *Telegraph Co.* 20 Iowa, 195; *Perry* v. *Bailey,* 12 Kan. 544; *Spurck* v. *Crook,* 19 Ill. 426.

While a juror can not be heard to impeach his verdict, yet he may unquestionably testify as to what the parties did and said upon the trial, and also as to any improper practices to corrupt the jury in its action, and the effect it may have had upon the jury in their decision. *Spurck* v. *Crook,* 19 Ill. 426; *Thomas* v. *Chapman,* 45 Barb. 99; *Heffron* v. *Gallupe,* 55 Me. 553.

For any, even the least, intermeddling with jurors a verdict will always be set aside. *Lyons* v. *Lawrence,* 12 Ill. App. 531; *Knight* v. *Freeport,* 13 Mass. 218; *Railroad Co.* v. *Davis,* 130 Ill. 155.

In the trial of a cause the appearance of evil should be as much avoided as evil itself. It is important that jurymen should be free from prejudice. It is hardly less so that they should be free from suspicion of prejudice. *Railroad Co.* v. *Davis,* 130 Ill. 155; *Stafford* v. *Oskaloosa,* 57 Iowa, 753.

Mr. R. S. THOMPSON, for the appellee:

The court will not disturb an award of compensation, in a condemnation proceeding, for property taken, where the jury have viewed the premises, and the award is within and justified by the evidence. *Kiernan* v. *Railway Co.* 123 Ill. 188; *Railway Co.* v. *Moore,* 124 id. 329; *Railroad Co.* v. *Blake,* 116 id. 163; *Railroad Co.* v. *Birbeck,* 70 id. 208; *Railway Co.* v. *McKinley,* 64 id. 338; *Railroad Co.* v. *Hopkins,* 90 id. 323; *Green* v. *Chicago,* 97 id. 327; *McReynolds* v. *Railroad Co.* 106 id. 156; *Mitchell* v. *Railroad Co.* 85 id. 566.

The affidavits of jurors can not be received to impeach their verdict. Baylies on New Trials, 543; Thompson & Merriam on Juries, sec. 444; 3 Graham & Waterman on New Trials, 1428, 1429; 1 Greenleaf on Evidence, sec. 252; *Forrester* v. *Guard,* Breese, 74; *Smith* v. *Eames,* 3 Scam. 76; *Martin* v. *Ehrenfels,* 24 Ill. 189; *Peck* v. *Brown,* 48 id. 63.

Separation of the jury is a matter lying within the discretion of the court, and where no harm is shown to have occurred by reason of such separation, the fact that the jury were, under the direction of the court, permitted to separate, is no ground for setting aside the verdict. Graham & Waterman on New Trials, 80, 85, 92; *State* v. *Babcock,* 1 Conn. 401; *Brandin* v. *Grannis,* id. 402; *Burrill* v. *Phillips,* 1 Gall. 360; *Crane* v. *Sayre,* 1 Halst. 110; *Winslow* v. *Draper,* 8 Pick. 170; *Railway Co.* v. *Helmerick,* 29 Ill. App. 170; *Dozenback* v. *Raymer,* 13 Col. 451; *State* v. *Nance,* 25 S. C. 168; *Power Co.* v. *Howard,* 150 Mass. 495; *State* v. *Stewart,* 26 S. C. 125; *Reins* v. *People,* 30 Ill. 257; *People* v. *Douglass,* 4 Cow. 26; *Rex* v. *Kinnear,* 2 B. & A. 462; *Drummond* v. *Leslie,* 5 Blf. (Ind.) 454; *Rex* v. *Wolf,* 1 Chitty, 401.

The permitting of one of the jurors to leave the jury room for a few moments to speak to his wife in the presence of the bailiff is not a ground for setting aside the verdict. *Miller* v. *People,* 39 Ill. 467; *Davis* v. *People,* 19 id. 77; *Ex parte Hill,* 3 Cow. 355; *Jones* v. *Warner,* 81 Ill. 343; *Smith* v. *Thompson,* 1 Cow. 221.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This was a proceeding by the Sanitary District of Chicago to condemn certain tracts of land necessary for its corporate purposes, belonging to appellees. A jury was regularly impaneled, heard the evidence, had personal view of the premises sought to be condemned, and returned a verdict fixing compensation to be paid the owners for the several tracts of land. Motion for new trial was overruled, and judgment in accordance with the statute rendered upon the verdict.

There is no complaint of misdirection by the court, but it is said that the compensation allowed by the jury is excessive, contrary to the weight of evidence, and that a new trial should, for that reason, have been awarded. We have examined the evidence carefully, find it to be conflicting, and that the ver-

dict of the jury is clearly within the range of the proof, some of the witnesses placing the valuation much higher and others very much lower than that fixed by the verdict.

We are committed to the doctrine, whatever may be the holding in other jurisdictions, that it is competent, under our statute, (Rev. Stat. sec. 9, chap. 47,) for the jury to consider what may be presented to their minds by and through their personal view and inspection of the premises, as well as the facts and circumstances brought to their knowledge through the medium of witnesses who testify in the cause. *Mitchell* v. *Illinois and St. Louis Railroad and Coal Co.* 85 Ill. 566; *Chicago and Iowa Railroad Co.* v. *Hopkins,* 90 id. 323; *Green* v. *Chicago,* 97 id. 372; *Chicago, Burlington and Northern Railroad Co.* v. *Bowman,* 122 id. 601; *Kiernan* v. *Chicago, Santa Fe and California Railroad Co.* 123 id. 188.

In the *Kiernan case, supra,* an instruction given for petitioner, to the effect that their personal view of the premises was evidence properly to be taken into consideration by the jury in making up their verdict, was expressly approved. In *Mitchell* v. *Indianapolis and St. Louis Railroad Co. supra,* it was said: "Under the statute the jury had a right to view the premises and draw their own conclusions from such observations, as well as from other testimony offered in the case." Undoubtedly, if the verdict was so palpably against the weight of the evidence that it could be said there was no evidence in the record upon which the jury may fairly have predicated their verdict, the trial court should not hesitate to set it aside. Here, if the jury believed the witnesses produced by appellees, there was ample evidence sustaining their finding, and in the absence of anything else showing that the verdict was the result of passion, prejudice or undue influence, the court would not be warranted in disturbing it.

On the motion for new trial, appellant offered the affidavits of three of the jurors, touching the conduct of others of the jurors and of the bailiff in charge, tending to impeach the ver-

dict. This court, in an unbroken line of decisions from the case of *Forrester* v. *Guard*, Breese, 74, is committed to the doctrine that the affidavits of jurors can not be received for the purpose of showing cause for setting aside the verdict. There may be *dicta* in some of the cases intimating a contrary rule, but in every case where the question has been before the court, and determined, the principle has been adhered to. *Smith* v. *Eames*, 3 Scam. 76; *Martin* v. *Ehrenfels*, 24 Ill. 189; *Rearden* v. *Smith*, 36 id. 206; *Reins* v. *People*, 30 id. 274; *Allison* v. *The People*, 45 id. 39; *Peck* v. *Brewer*, 48 id. 63; *Baldwin* v. *Smith*, 82 id. 162; *Reed* v. *Thompson*, 88 id. 247; *Niccolls* v. *Foster*, 89 id. 386.

It is conceded that such affidavits can not be received to avoid a verdict when they show matters resting within the breast of the juror, such as, that he did not assent to the verdict, did not understand the evidence or the instructions, or that he was mistaken in his calculation and judgment, and the like; but it is contended that they may be received to show the conduct of others than the jurors, or improper conduct in arriving at a verdict by the jurors themselves, such as, that it was obtained by average, or by lot, or in any other improper manner. In support of this distinction, counsel cite *Wright* v. *I. & M. Tel. Co.* 20 Iowa, 195, and might have added cases from the States of Tennessee and Kansas, and perhaps others of which we are not aware. We are not, however, convinced by the reasoning of those cases, and decline to depart from the rule recognized by the courts of England, and by the highest courts of the States, as it is believed, other than those named, and which we regard as the safer and better rule.

In Graham & Waterman on New Trials (vol. 3, 1429,) it is said: "It is admitted, notwithstanding adjudications to the contrary, that it is now well settled, both in England, and, with the exception of Tennessee, perhaps in every State, * *. * that affidavits can not be received, and we believe

upon correct reasoning. If it were otherwise, but few verdicts would stand. It would open the widest door to endless litigation, fraud and perjury, and it is condemned by the clearest principles of justice and public policy." In Baylies on New Trials (p. 543) it is said: "Affidavits of jurors will not be received, upon the motion for new trial, for the purpose of impeaching their verdict, by showing error or mistake in respect of the merits, or by showing their own misconduct or that of their fellows, or by showing that the misconduct of others affected their verdict." See, also, Thompson & Merriam on Juries, 440 ; 1 Greenleaf on Evidence, 252.

The grounds stated for the rejection of such affidavits have usually been, first, because they would tend to defeat the solemn act of the juror, under oath ; second, because their admission would open the door to tamper with jurymen, after their discharge ; third, it would furnish to dissatisfied and corrupt jurors the means of destroying the verdict to which they had assented. (3 Graham & Waterman on New Trials, 1428.) It was said by Lord ELLENBOROUGH in *Rex* v. *Wooler,* 2 Stark. 111: "The danger would be infinite if an affidavit could be received from the jurymen for the purpose of setting aside a verdict." And Lord MANSFIELD, in *Owen* v. *Warburton,* 1 New Rep. 326, said, that "considering the arts which might be used if the contrary rule were to prevail, we think it necessary to exclude such evidence." No good purpose would be served by citing or reviewing the English or American authorities declaring the general rule to be as settled in this State.

In trials in the courts of justice not only should there be absolutely nothing improper permitted, but, to the end that respect for the administration of the law may be maintained, the very appearance of evil should be avoided, and the courts are clothed with ample power to punish, appropriately, the misconduct of jurors, and of others in their presence, and no court ought to hesitate to impose adequate penalties and set

aside verdicts where there has been conduct by which the jury may have been improperly influenced, or the verdict has been the result of improper conduct on the part of jurors. But to permit the affidavits of jurors to be heard, showing that the verdict to which they, on their oaths, consented, was the result of improper influence or corrupt practice, "is condemned by the clearest principles of justice and public policy." But few verdicts in important cases would be permitted to stand. Litigants, in whose favor verdicts might be rendered, would be placed at the mercy of corrupt jurors. Litigation would be increased, the widest door thrown .open to fraud and perjury, and the administration of the law brought into contempt.

The affidavits of jurors showing or tending to show improper conduct on the part of the officer in .charge, or of the jurors or others, can not be received, for the purpose of impeaching the verdict. It should, perhaps, be said, that the affidavits of a large majority of the jury, offered to sustain the verdict, disprove the alleged misconduct of the officer in charge of the jury.

It is complained that after they had finished viewing the premises some of the jurors drank intoxicating liquor. It is not, however, shown that any of them drank so as to become intoxicated, or that the persons furnishing the liquor were in anywise interested in the case, nor is it shown, in any way, that the jury were thereby influenced to the prejudice of appellant. In such case, while the jurors and the officer in charge should have been punished for the impropriety, it will not be sufficient to warrant the setting aside of the verdict. *Davis* v. *The People,* 19 Ill. 77 ; *People* v. *Gray,* 61 Cal. 185.

. It is also objected that the juryman Miller was permitted to see his wife, at some time during the consideration of the case, out of the presence of the other jurors. It is shown that whatever conversation she had with him was in the presence of the bailiff, and was upon subjects wholly disconnected with

the case.   We held in *Miller* v. *The People*, 39 Ill. 467, that
the officer in charge of a jury, after the case had been com-
mitted to them, who suffered individual jurors to separate
from the panel without leave of the court, deserved punish-
ment as for contempt; nor should the officer suffer or permit
any person to hold any communication with them while in his
charge.   But it clearly appearing that there was no influence
brought to bear upon the juror, and there being nothing tend-
ing to show prejudice to either of the parties, the court would
not be justified in setting aside the verdict for that reason, if
it was otherwise proper.   See *Jones* v. *Warner*, 81 Ill. 343;
*Ex parte Hill*, 3 Cow. 355.

It is also objected that the jury were permitted to separate.
It appears that the jury, after having retired to consider of
their verdict early in the afternoon, remained together until
about eleven o'clock at night, and were then, under the direc-
tion of the court, permitted to separate, and to meet the court
at nine o'clock the next morning.   On re-assembling, as we
understand the record, the court stated to the attorneys of the
respective parties that if they had any objection to the action
of the court in permitting the jury to separate, to make such
objection known.   Counsel for appellee waived any objection,
whereupon the court stated to petitioner's counsel that if he
had any objection to make it known at once, as the court
would not permit the petitioner to wait until after verdict and
then urge the separation as a cause for new trial.   The attor-
ney for appellant declined to consent or object.   We are of
opinion that by not objecting when he had the opportunity to
do so, the right was waived.   If objection had then been in-
terposed, the court might have taken such steps as would
have obviated the objection.   Appellant could not lie by with
full knowledge of what was being done, ready to accept it if
the verdict was favorable, and insist upon it if the verdict
should prove unfavorable.   Moreover, as said in *Reins* v. *The
People, supra,* which was a capital case: "The separation

of the jury without consent is not, of itself, error. It must be shown, besides, that the accused might have been prejudiced; that the jury might have been tampered with, or improperly influenced in some manner, in consequence of the separation, so as to affect their verdict." In civil cases the court will always inquire whether injury has ensued from the separation, and where no abuse is shown or suggested it will not be sufficient to avoid the verdict. Graham & Waterman on New Trials, 80-85; *Drummond* v. *Leslie*, 5 Blf. (Ind.) 454.

We find no such error in this record as will authorize a reversal, and the judgment of the circuit court is affirmed.

*Judgment affirmed.*